IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RALPH NADER,**
    **Plaintiff,**

v.

**Case No. 2:06-CV-821**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Terence P. Kemp**

**J. KENNETH BLACKWELL,**
    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendant's Motion to Dismiss the Plaintiff's Complaint. (Doc. #4). For the reasons that follow, the motion is granted.

### I.

Plaintiff, Ralph Nader ["Plaintiff"], brings this action challenging the decision of the former Ohio Secretary of State, J. Kenneth Blackwell, to remove Plaintiff from the presidential electoral ballot in 2004. Plaintiff's claim is pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Plaintiff was an independent candidate for President of the United States during the 2004 election. Plaintiff employed volunteer and paid circulators to collect signatures for Nader's placement on the ballot in Ohio. Plaintiff collected 14,473 signatures. After review by local election boards, however, only 4,464 were determined to be valid. (*Complaint* at ¶ 16). Approximately one week before the Secretary of State's official certification to be placed on the ballot, a group of Ohio elector protestors commenced a challenge to the certification. (*Id.* at ¶¶

19-20). An administrative hearing was held on the issue and 2,756 signatures were invalidated. The Hearing Officer invalidated 1,956 signatures because the circulators of the petitions on which the signatures appeared had falsely attested to having Ohio residences. An additional 800 signatures were invalidated for technical reasons unrelated to the residency requirement. Thus, Plaintiff was left with 3,708 valid signatures, well short of the 5,000 signature requirement for placement on the ballot. *See Blankenship v. Blackwell*, 429 F.3d 254, 255-56 (6th Cir. 2005).

Five Ohio residents who were members of Nader's nominating committee filed an action in the Ohio Supreme Court seeking a writ of mandamus against the Ohio Secretary of State. The Ohio Supreme Court denied the requested relief on the ground of laches, finding that the delay in challenging the Ohio residency requirement prejudiced the citizens of Ohio by hampering the processing of absentee ballots and by forcing the Secretary of State to defend the protestors' claim on an expedited basis with limited appellate rights. *Blankenship v. Blackwell*, 817 N.E.2d 382, 387-88 (Ohio 2004).

The members of Nader's nominating committee also filed suit in this Court seeking a temporary restraining order to prevent the Secretary of State from removing Nader from the Ohio election ballot. The plaintiffs also sought an injunction compelling the Secretary of State to count as valid the signatures that had been invalidated based on the residency requirement, and a declaratory judgment that the Ohio statute violates the First and Fourteenth Amendments to the United States Constitution. The undersigned concluded that because the state permissibly invalidated the 1,956 signatures on the basis of fraudulent attestations by circulators, injunctive relief was not warranted. This Court also applied the doctrine of unclean hands as a basis for denying the declaratory relief requested. *Blankenship v. Blackwell*, 341 F.Supp.2d 911, 924

2

(S.D. Ohio 2004). The plaintiffs sought expedited review in the Sixth Circuit Court of Appeals, which was denied.

On appeal, the Sixth Circuit declined to review this Court's decision on the declaratory judgment claim and dismissed the appeal. The court did note, however, that nothing foreclosed the plaintiffs from filing suit to challenge the constitutionality of the Ohio statute "for nominating petition circulators in the context of a future election." 429 F.3d at 259.

In this case, Plaintiff Nader claims that the Secretary of State's decision to exclude "otherwise valid voters' signatures from Plaintiff's nominating petitions because of R.C. § 3503.06's residence and voter registration requirements violated the First and Fourteenth Amendments to the United States Constitution as well as the Dormant Commerce Clause and Article IV, § 2." (*Complaint* at ¶ 33). Plaintiff brings this action under 42 U.S.C. § 1983 and seeks nominal damages. The Defendant moves to dismiss the Complaint on the basis of absolute and qualified immunity.

## II.

A motion to dismiss for failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the

3

court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claim made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

### III.

Article III of the United States Constitution limits federal courts to the adjudication of actual "cases" and "controversies." U.S. CONST. art. III, § 2. Thus, in every case, this Court must consider whether it has the power to entertain the suit. The series of principles which guide the Court's consideration in this regard are referred to as "justiciability doctrines." Under Article III, a litigant must have "standing" to invoke the jurisdiction of a federal court. *Allen v. Wright*, 468 U.S. 737, 750 (1984). Article III standing requires that the litigant have suffered an injury-in-fact, fairly traceable to the alleged unlawful conduct of the Defendant and likely to be redressed by the relief requested. *Id.* The Supreme Court has articulated the following factors necessary to show standing:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992) (citations and footnote omitted).

In this case, Plaintiff has sued the former Ohio Secretary of State in his individual capacity for damages arising from the Secretary's decision to remove Plaintiff's name from the presidential ballot in 2004. Given the passage of time since this event, the Court is not convinced that Plaintiff has articulated the sort of "injury in fact" sufficient to confer standing for purposes of Article III. While removal of Plaintiff's name from the ballot created a concrete and particularized invasion of a legally protected interest traceable to the Defendant's action, the Court questions the likelihood of how the injury will be redressed by a favorable decision at this juncture in time. Plaintiff Nader seeks nominal damages for his claim. The real relief that Plaintiff seeks is that the Court find R.C. § 3503.06 unconstitutional. This Court declined to consider the constitutionality of the statute when Plaintiff first filed suit in this court. This Court explained:

> Federal courts are obligated not to "decide questions of a constitutional nature unless absolutely necessary to a decision of the case." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). In this case, even if the residency requirement were held to be unconstitutional, Ohio law would require the invalidation of all names on petitions signed by circulators who fraudulently claimed they lived in Ohio. As noted in *Ashwander*, in such circumstances, it is improper for a federal court to consider striking down as unconstitutional a state law, if such action does not effect the outcome of the case. Because the Secretary of State invalidated the challenged names on the independent basis of fraud, this Court declines to address Plaintiff's constitutional challenge to R.C. § 3503.06.

*Blankenship v. Blackwell*, 341 F.Supp.2d 911, 924 (S.D. Ohio 2004).

The Court finds no reason to depart from this analysis simply because Plaintiff Nader seeks to hold the former Secretary of State individually liable for the action of removing Plaintiff from the ballot in 2004. The Court concludes that Plaintiff has failed to satisfy Article III's

requirement of standing to pursue the present claim.

## IV.

Even if the Court were to conclude that Plaintiff has standing, the Court nevertheless finds that the Defendant is entitled to qualified immunity from suit. As an executive officer, the Defendant can be immune from a civil suit for damages under § 1983. *Scheuer v. Rhodes*, 416 U.S. 232, 247-48 (1974). In order to defeat the exercise of qualified immunity, the Plaintiff must show that the Defendant has violated his constitutional rights; that the violation involved "a clearly established constitutional right of which a reasonable person would have known;" and the objective unreasonableness of the action taken in light of the "clearly established constitutional rights." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (citations omitted).

As the Defendant points out, the decision to remove Plaintiff from the ballot in 2004 was based upon a finding that Plaintiff's petition circulators had committed massive fraud by lying about their residency status; the validity of R.C. § 3503.06 was never addressed. In view of this circumstance, Plaintiff has not shown that the action taken by Defendant was based upon a violation of Plaintiff's constitutional rights. Consequently, Plaintiff has not defeated Defendant Blackwell's qualified immunity from suit under § 1983.

Alternatively, the Defendant also contends that he is entitled to absolute immunity from suit. Executive branch officials in state government may be entitled to absolute immunity from suit for acts that are the functional equivalent of acts of prosecutors or judges. *Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992). Whether immunity applies depends on the characteristics of the process employed.

> Where the function in question is clearly adjudicative or prosecutorial in nature, other courts have generally taken the position that public policy requires application of the rule of absolute immunity. "[A]gain and again," as the Supreme Court said in *Briscoe*, the Court has recognized that in situations involving performance of a function that is judicial in character, "the alternative of limiting the official's immunity would disserve the broader public interest." 460 U.S. at 345.

*Id.* at 274. Defendant argues that absolute immunity applies because a four-day hearing was held prior to the decision to remove Plaintiff from the ballot. According to the Defendant, the hearing was quasi-judicial in nature since each side was represented by counsel and was afforded the opportunity to present evidence and cross-examine witnesses. Further, Plaintiff was entitled to appeal the decision through a state mandamus action.

Plaintiff argues that absolute immunity should not apply because the hearing was not governed by the Ohio Administrative Procedure Act. Plaintiff also argues that this Court's earlier decision not to apply the *Younger* abstention doctrine was predicated on a finding that the hearing was not a quasi-judicial action. With respect to the latter argument, the Plaintiff misinterprets this Court's earlier decision. The Court's decision did not analyze the nature of the proceeding initiated by Defendant Blackwell. Rather, the Court concluded that, although there was a pending state court action challenging Blackwell's decision, because a federal constitutional violation was alleged, this Court had an obligation to adjudicate the claim asserted in federal court. 341 F.Supp.2d at 919. Thus, the Court declined to apply the *Younger* abstention doctrine. *Id.*

The Court concludes that the hearing held prior to the decision to remove Plaintiff's name from the ballot was sufficiently adjudicative in nature to confer absolute immunity. The hearing consisted of the presentation of evidence and cross-examination of witnesses; the parties were

7

represented by counsel; the Hearing Officer issued a thirty-one page Findings of Fact and Conclusions of Law ruling; and Plaintiff sought a writ of mandamus in response to the Defendant's decision. In view of the nature of the proceeding, the Court disagrees with Plaintiff that the absence of reference to the Ohio Administrative Procedure Act takes the proceeding outside the realm of being quasi-judicial in nature. The Court observes that, whether absolute immunity applies depends on the facts of the particular case. Based on the present set of circumstances, the Court finds that Defendant Blackwell is shielded from the instant lawsuit on the basis of absolute immunity[1].

V.

For the foregoing reasons, the Defendant's Motion to Dismiss (**Doc. #4**) is **GRANTED**. The Plaintiff's Motion to Strike (**Doc. #14**) is **DENIED**. The Clerk is **DIRECTED** to enter Judgment in favor of the Defendant.

**IT IS SO ORDERED.**

9-19-2007
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

---

[1]The Court notes that, in his Reply Memorandum, Defendant Blackwell argues that Plaintiff's § 1983 claim is barred by the two-year statute of limitations to the extent Defendant Blackwell challenges activities that occurred prior to the Defendant's decision to decertify Plaintiff's candidacy, on September 28, 2004. This action was filed on September 28, 2006. Plaintiff argues that there is doubt as to the application of the statute of limitations because Plaintiff's claim may be subject to equitable tolling. Plaintiff has filed a Motion to Strike the Reply Memorandum to the extent it raises the statue of limitations as a defense.
   In light of the Court's decision set forth above, the Court finds it unnecessary to resolve any issue about the statue of limitations. Thus, the Court declines to strike the Defendant's Reply Memorandum.

8